UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JUAN P. VAZQUEZ,

                 Petitioner,

         - against -                     **MEMORANDUM & ORDER**
                                              23-CV-564 (PKC)

SUPERINTENDENT MARK MILLER,

                 Respondent.

--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

       Petitioner Juan P. Vazquez ("Vazquez" or "Petitioner"), appearing *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for first degree rape under New York Penal Law § 130.35(2) and sexual abuse in the first degree under New York Penal Law § 130.65(2), and his 15-year sentence entered on April 24, 2018 in the Supreme Court of the State of New York, Queens County. (*See generally* Petition ("Pet."), Dkt. 1.) For the reasons set forth below, the petition is denied.

## BACKGROUND

### I.    Underlying Facts[1]

       On the night of March 5, 2016, Petitioner, a taxi driver, was acting as the designated driver for a birthday celebration of his family friend Ivan. (State Court Record ("R."), Dkt. 10, at 33, 36,

---

[1] Because Petitioner has already "been found guilty of the crime[s] charged," the Court construes the facts "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State . . . .").

59.)[2]  Ivan's sisters, Lola,[3] Sylvana, and IA attended the celebration.[4]  (R. 32.)  IA, who does not normally drink, consumed alcohol during the celebration that evening, which first took place at Ivan's home and then moved to a nightclub in Queens, with Petitioner driving the group.  (R. 32–34.)  Due to her alcohol consumption, IA was unsteady on her feet and felt "weak."  (R. 36.)  After several hours of dancing and drinking at the club, the group left the nightclub and was driven to Ivan's home by Petitioner, who had not drunk alcohol that night, at approximately 4 a.m. (R. 36–37, 48, 64.)  At Ivan's home, Ivan and his sisters continued to hang out and drink.  (R. 36–37.)  At that point, IA began feeling "more and more weak" and decided to rest.  (R. 38.)  Her sister, Sylvana, opened a pull-out couch, and IA "pass[ed] out" on the couch along with her sister Sylvana.  (*Id.*)

At a certain point, Sylvana woke up when she felt the couch "shaking," and saw Petitioner behind IA with his boxers down, thrusting into IA's body while holding her hips.  (R. 96–97, 106–07, 116.)  At the time, IA was lying on her side on the couch, and was unresponsive and "out cold."  (R. 98, 100.)  Sylvana yelled at Petitioner, asking him what he was doing, at which point "he jumped out the couch to try to pull his pants up" and Sylvana observed Petitioner's exposed genitalia.  (R. 97, 107.)  Petitioner began to cry and got on his knees to beg Sylvana not to say anything.  (R. 97–98.)

---

[2] References to the State Court Record refer to the numbering assigned by the Court's electronic docketing system and not the internal pagination appearing in the underlying document.

[3] Petitioner is a nephew of Lola's ex-husband.  (R. 29, 88.)

[4] By order dated June 1, 2023, the Court granted Respondent's request to file the State Court Record under seal pursuant to New York Civil Rights Law § 50-b.  (*See* 6/1/2023 Docket Order; s*ee also* Resp't Mot. to Seal, Dkt. 5.)  The Court uses the initials of the victim to protect her privacy.

After passing out on the pull-out couch, the next thing IA remembers is being awoken by Sylvana's screaming, at which point IA discovered that her pants and underwear were pulled down toward her knees and her blouse was pulled up, exposing her.  (R. 38–41.)  IA then felt pain and wetness in her genital area.  (R. 41.)

Subsequently, IA was taken to the hospital where she was examined by a physician's assistant.  (R. 43–44, 47–48, 186, 196.)  A sexual assault kit taken from IA revealed the presence of blood and male genetic material around and inside IA's vagina.  (R. 135, 137.)  The physician's assistant who examined IA observed a skin tear near her vagina, "consistent with forcible penetration."  (R. 199–202.)  As of March 6, 2016, the date of the assault, IA had not been sexually active for approximately two years.  (R. 45.)

## II.    Bench Trial

Petitioner waived his right to a jury trial and proceeded to a bench trial before Judge Richard Buchter in New York Supreme Court, County of Queens.  (R. 9, 55.)  Petitioner's bench trial was held from November 1, 2016 to November 8, 2016.  (R. 9, 238.)  At trial, the People presented IA, Sylvana, Ivan, several police officers, the physician's assistant who examined IA, and a criminalist from the Office of the Chief Medical Examiner who tested the sexual assault kit as witnesses.  (R. 28–54 (testimony of IA); 56–76 (testimony of Ivan); 87–118 (testimony of Sylvana); 120–57 (testimony of criminalist Jennifer Dorry); 162–84 (testimony of New York City Police Department ("NYPD") Officer Lucia Mohamed); 186–215 (testimony of physician's assistant Susan Tauman).)  Petitioner presented one defense witness.  (R. 222–35 (testimony of NYPD Detective James Ropenus).)

At the conclusion of the evidence, Judge Buchter "found the testimony as given by the People's witnesses to have been credible and cogent despite some minor inconsistences, and

moreover, their testimony was corroborated by the medical and forensic findings." (R. 258.) He concluded, *inter alia*, that given "the evidence of [IA]'s helplessness at the time of the incident," "[Petitioner]'s statements upon being discovered in the act of committing the crime showing his consciousness of guilt," and "the internal injury to [IA]," the elements of first-degree sexual abuse and first-degree rape were established beyond a reasonable doubt. (R. 258–59.)

Petitioner was sentenced on April 24, 2018 to a determinate term of imprisonment of 15 years on the rape charge with a 5-year period of supervised release, and a 7-year term of imprisonment on the sexual abuse charge with a 5-year period of supervised release, to run concurrently. (R. 262–67.)

## III.    Direct Appeal & Writ of Error Coram Nobis

Petitioner, through counsel, filed an appeal of the judgment issued in Queens County Supreme Court on May 15, 2018, in the New York Appellate Division, Second Department ("Appellate Division"). (Dkt. 10-1, at 8.) The briefing in the direct appeal raised three arguments: (1) that the court's verdict was against the weight of the evidence due to, *inter alia*, the lack of evidence of Petitioner's DNA, and unreliable witnesses; (2) that Petitioner's trial counsel was ineffective because of Petitioner not testifying in his own defense and Petitioner's waiver of a jury trial; and (3) that Petitioner's waiver of his right to a jury trial did not comply with the statutory requirements and was not knowing, intelligent, or voluntary. (Dkt. 10-1, at 3–5.)

The Appellate Division affirmed the trial court's judgment, thus rejecting Petitioner's appeal by order dated April 20, 2022. *See People v. Vazquez*, 164 N.Y.S.3d 850 (N.Y. App. Div. 2022). As to Petitioner's first point, the Appellate Division concluded that the verdict was not against the weight of the evidence. *Id.* at 850–51. As to Petitioner's second point, the Court rejected Petitioner's ineffective assistance of counsel claim because it constituted "a mixed claim

4

of ineffective assistance" that relied "in part, on a matter outside the record." *Id.* at 851. Because the relevant information was not before the court, the Appellate Division noted that Petitioner would need to seek relief pursuant to New York Criminal Procedure Law ("NYCPL") Section 440.10. *Id.* Finally, as to Petitioner's third point, the Appellate Division stated that because Petitioner never objected below to his waiver of a jury trial, that argument was unpreserved for appellate review. *Id.* The Appellate Division added, in conclusion, "[i]n any event, the record does not support the defendant's contention that his waiver of the right to a jury trial was not knowing, voluntary, and intelligent." *Id.*

On August 29, 2022, the New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision. *See People v. Vazquez*, 194 N.E.3d 746 (N.Y. 2022). Petitioner did not petition the United States Supreme Court for a writ of certiorari. (Pet., at ECF 3.)[5]

Approximately three months after the Appellate Division affirmed his conviction, Petitioner filed a writ of error coram nobis in the Appellate Division seeking to vacate the Appellate Division's affirmance of his conviction on the ground of ineffective assistance of appellate counsel. (Pet., at ECF 16–21.) The Appellate Division denied that motion on November 2, 2022. *See People v. Vazquez*, 175 N.Y.S.3d 909 (N.Y. App. Div. 2022). Petitioner did not seek leave to appeal this denial with the Court of Appeals. (*See* Pet., at ECF 5.)

## IV.    The Instant Petition

The instant habeas petition was timely filed on December 28, 2022.[6]  (Pet., at ECF 42.) Petitioner challenges his conviction on the following grounds: (1) he is actually innocent; (2) the

---

[5] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

[6] The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on petitions seeking habeas relief from a state court judgment. 28 U.S.C.

trial court's verdict was against the weight of the evidence; (3) he received ineffective assistance of both trial and appellate counsel; and (4) his waiver of a jury trial was not knowing and voluntary. (*See generally* Pet.)

## LEGAL STANDARDS

A federal district court may "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order to obtain relief, such a petitioner must demonstrate, *inter alia*, that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in AEDPA, if his appeals were decided on the merits. *See, e.g.*, *Georgison v.*

---

§ 2244(d)(1). The one-year period runs from the date on which one of the following four events occurs, whichever is latest: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *Id.* §§ 2244(d)(1)(A)–(D). A judgment of conviction becomes "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) upon completion of a defendant's direct appeal in the state's highest court and either (a) completion of proceedings before the United States Supreme Court if the petitioner chooses to file for a writ of certiorari, or (b) the expiration of the 90-day time period to seek such a writ. *See Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001); U.S. Sup. Ct. R. 13(1). A *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials for mailing to the court. *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (per curiam). Here, Petitioner's state court judgment would have become final on November 27, 2022, the day on which the 90-day period for him to seek a writ of certiorari (with respect to the Appellate Division's August 29, 2022 decision) expired. Thus, Petitioner's filing of this habeas action on December 28, 2022, which was well within a year after November 27, 2022, was timely.

*Donelli*, 588 F.3d 145, 153 (2d Cir. 2009); *accord Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365–66 (E.D.N.Y. 2013).

## I.     Exhaustion

Before seeking federal habeas relief, a state habeas petitioner must first exhaust his state remedies by fairly presenting his constitutional claims to the state courts.   *See* 28 U.S.C. § 2254(b)(1)(A); *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010).   A petitioner fairly presents a constitutional claim to the state courts when he presents the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.   *See Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## II.     Procedural Default

A petitioner's failure to include claims on direct appeal is a procedural default that precludes him from raising those claims in a federal habeas petition.   *See Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Teague v. Lane*, 489 U.S. 288, 298–99 (1989).   To overcome the bar to federal habeas review of a claim that has been procedurally defaulted in state court, a petitioner must "demonstrate either cause and actual prejudice, or that he is actually innocent."   *Gomez v. United States*, 87 F.4th 100, 107 (2d Cir. 2023) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted)).   Where a petitioner makes no effort to meet this standard, a court cannot grant habeas relief.   *See Angeles v. Greiner*, 267 F. Supp. 2d 410, 416 (E.D.N.Y. 2003); *Collins v. Artus*, No. 08-CV-1936, 2009 WL 2633636, at *9 (S.D.N.Y. Aug. 26, 2009).

III.    **AEDPA Deference**

Where a state court has reached the merits of a claim asserted in a Section 2254 petition, the state court's decision is entitled to deference under AEDPA and the petition must be denied unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court," or "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the State court arrived at an opposite result.  *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  A state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  "[A]n *unreasonable* application of federal law," however, "is different from an *incorrect* application of federal law." *Id.* at 410; *see also Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable.").  A federal court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Orlando v. Nassau Cnty. Dist. Att'ys Off.*, 915 F.3d 113, 120–21 (2d Cir. 2019).

8

IV.     *Pro Se* Petitions

Because Petitioner in this case is *pro se*, the Court liberally construes the Petition and interprets it "to raise the strongest arguments that [it] suggest[s]."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  At the same time, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *Id.* at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *accord O'Neal v. New York*, 465 F. Supp. 3d 206, 216 (E.D.N.Y. 2020).

## DISCUSSION

I.     **Petitioner's Exhausted Claim**

A.     **Weight of the Evidence**

Because Petitioner argued on appeal that his conviction was against the weight of the evidence—a claim that was rejected by the Appellate Division and for which the Court of Appeals denied leave to appeal—this claim is exhausted.  (Pet., at ECF 7.)  Such a claim, however, is not cognizable on federal habeas review.  *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (summary order); *see also Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A weight of the evidence argument is a pure state law claim grounded in [NYCPL] § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." (internal quotation marks omitted)).  "It is well-established that a weight of the evidence claim is exclusively a matter of state law and therefore presents no federal question reviewable by a federal habeas court."  *Lopez v. Superintendent of Five Points Corr. Facility*, No. 14-CV-4615 (RJS) (JLC), 2015 WL 1300030, at *12 (S.D.N.Y. Mar. 23, 2015), *R. & R. adopted*, 2015 WL 2408605 (S.D.N.Y. May 20, 2015).  Petitioner is therefore not entitled to federal relief on this ground.  However, given Petitioner's *pro se* status, and the fact that in his reply papers, he

writes, "[t]he evidence is insufficient to sustain The Bench Trial Verdict of Guilty" (Reply, Dkt. 12, at ECF 5), the Court construes his claim as asserting a sufficiency of the evidence claim under the Fourteenth Amendment's Due Process Clause.

## B.     Sufficiency of the Evidence

"A challenge to the sufficiency of the evidence must be rejected if 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garrett v. Perlman*, 438 F. Supp. 2d 467, 471 (S.D.N.Y. 2006) (quoting *Jackson*, 443 U.S. at 319). When assessing the sufficiency of the evidence of a state conviction "[a] federal court must look to state law to determine the elements of the crime." *Ponnapula*, 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). In this case, Petitioner was found guilty of first-degree rape and first-degree sexual abuse. To establish Petitioner's guilt on the rape count, the People were required to prove that Petitioner engaged in sexual intercourse with another person who was "incapable of consent by reason of being physically helpless." *See* N.Y. Penal Law § 130.35(2). To establish Petitioner's guilt on the sexual abuse count, the People were required to prove that Petitioner "subject[ed] another person to sexual contact" when the other person is "physically helpless." *See id.* § 130.65(2).[7]

"As an initial matter, given that the [Appellate Division] decided that the verdict was not against the weight of the evidence[,] . . . it necessarily also found that the verdict was supported

---

[7] Petitioner argues, in the context of his unexhausted ineffective assistance of trial counsel claim, discussed further *infra*, that the two crimes with which he was convicted are "inclusory concurrent counts." (Pet., at ECF 3.) The Court does not reach the merits of Petitioner's ineffective assistance of counsel claim but notes, as a matter of New York law, that Petitioner is incorrect regarding his inclusory counts argument. *See People v. Wheeler*, 494 N.E.2d 88, 89 (N.Y. 1986) ("[I]t is possible to commit the crime of rape in the first degree without having the specific intent necessary to establish the crime of sexual abuse in the first degree.").

by sufficient evidence." *Fabers v. Lamanna*, No. 18-CV-2399 (PKC), 2020 WL 1875288, *15 (E.D.N.Y. Apr. 15, 2020) (citation omitted).   Regardless, it is clear that there was more than sufficient evidence supporting Petitioner's convictions as to both offenses.   Evidence presented at trial included Sylvana's eyewitness account of Petitioner thrusting his body into IA's body while IA was "out cold," and thus, helpless, on the pull-out couch.   (R. 96–98, 106–07, 116.)   IA also testified that she woke up to her body being exposed and immediately felt pain in her genital area.   (R. 38–41.)   Medical evidence presented by the People established that injuries sustained by IA that morning were "consistent with forceable penetration."   (R. 199–202.)   Finally, further demonstrating Petitioner's guilt was his behavior when he was caught in the criminal act—crying and begging Sylvana not to tell anyone of his actions.   (R. 97–98.)   That Petitioner evidenced consciousness of his own guilt of these crimes is plain.

Thus, any claim that there was insufficient evidence to support Petitioner's conviction is wholly without merit.

## II.   Petitioner's Unexhausted Claim

### A.   Options for Dealing with Unexhausted Habeas Claims

Having discussed Petitioner's properly exhausted claim, the Court now turns to Petitioner's unexhausted claim that his trial counsel was ineffective.[8]   Because Vazquez's habeas petition presents both exhausted and unexhausted claims, it is a "mixed" petition.   "When confronted with a mixed petition, . . . a 'Court may: (1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits; (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow

---

[8] As discussed *infra*, Petitioner's claim of ineffective assistance by his appellate counsel is also unexhausted, but because it is also procedurally barred, the Court addresses it in that context below.

petitioner to exhaust his unexhausted claims.'" *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017) (quoting *Francois v. Warden of Sullivan Corr. Facility*, No. 12-CV-5333 (RRM), 2014 WL 1153920, at *4 (E.D.N.Y. Mar. 19, 2014)).

Option One—dismissing the petition without prejudice to allow the Petitioner to return to state court to exhaust the unexhausted claims—is not appropriate here because AEDPA's one-year statute of limitations with respect to Petitioner's ability to bring another habeas petition challenging his conviction expired on November 27, 2023. *See Zarvela v. Artuz*, 254 F.3d 374, 381–82 (2d Cir. 2001). Option Two allows the Court to reach the merits of all of the claims in the amended petition, unexhausted and exhausted alike. However, "the only outcome with this option is denial of the entire petition." *Brewer v. Eckert*, No. 19-CV-6486 (FPG), 2020 WL 10061923, at *5 (W.D.N.Y. Sept. 10, 2020). This option is appropriate where the unexhausted claim is "plainly meritless" or "patently frivolous." *See Williams v. Artus*, 691 F. Supp. 2d 515, 526 (S.D.N.Y. 2010) ("If the unexhausted claims are 'plainly meritless,' the district court can dismiss these claims on the merits."); *see also Robinson v. Phillips*, No. 04-CV-3446 (FB), 2009 WL 3459479, at *1 (E.D.N.Y. Oct. 23, 2009) ("If the basis of a claim has not been presented to a state court, AEDPA nonetheless permits a district court to deny a claim on the merits if it is patently frivolous."). Option Three allows the Court to "assume that the petitioner would prefer the Court to consider the majority of his claims rather than dismiss the petition outright, treat the unexhausted claims as excised from the petition, and consider the remainder of the claims on the merits." *Warren v. Goord*, No. 06-CV-1423 (RRM), 2013 WL 1310465, at *11 (E.D.N.Y. Mar. 28, 2013) (collecting cases). Option Four allows the Court to stay proceedings only where "the unexhausted claims are not 'plainly meritless' and . . . 'there [is] good cause for the petitioner's failure to

exhaust his claims first in state court.'" *Wesley-Rosa*, 274 F. Supp. 3d at 128 (quoting *Rhines v. Webber*, 544 U.S. 269, 277 (2005)).

As discussed below, based on the procedural history of this matter and Petitioner's habeas submissions, the Court must determine which of these four options to use with respect to each of Petitioner's unexhausted claims.

### B.     Ineffective Assistance of Trial Counsel

Petitioner asserts that he received ineffective assistance of trial counsel.  (Pet., at ECF 8.)  The Appellate Division did not reach the merits of this argument on Petitioner's direct appeal and explicitly stated in its denial that this was because his ineffective assistance claims partially involved matters outside of the record.  *See Vazquez*, 164 N.Y.S.3d at 851.  The Appellate Division noted that Petitioner should file a motion to vacate his sentence pursuant to NYCPL § 440.10 to develop this claim further.  *Id.*  To date, Petitioner has not filed such a motion and fails to explain why he has not done so in his habeas submission.  Petitioner can, however, still return to state court for relief on his ineffective assistance of counsel claims by filing an NYCPL § 440.10 motion. *See* N.Y. Crim. Pro. L. § 440.10(1) (providing that a motion to vacate may be made "[a]t any time after the entry of judgment").  Given this context, the Court must assess the options available to it, but absent any indication as to why Petitioner has not pursued this avenue of litigation, the Court is between a rock and a hard place.

Option One, which would dismiss this claim without prejudice, is not viable because AEDPA's one-year statute of limitations has run, as discussed.  Option Two, which would allow the Court to reach the merits of Petitioner's ineffective assistance of counsel claim, is only viable if the Court determines this claim to be "plainly meritless."  *Williams*, 691 F. Supp. 2d at 526.  However, "because the record does not contain the alleged off-the-record conversations on which

[Petitioner's] ineffective assistance claims rely, the Court cannot reliably assess their merits." *Ramirez v. Superintendent of Shawangunk Corr. Facility*, No. 17-CV-7185 (PAE) (HBP), 2019 WL 3714992, at *2 n.7 (S.D.N.Y. Aug. 6, 2019).  Option Four, which would enable the Court to stay this case and allow Petitioner to exhaust his ineffective assistance of counsel claims in an NYCPL § 440.10 proceeding, is unavailable to the Court because of the lack of good cause—or any cause at all—shown by Petitioner as to why he has not filed a § 440.10 motion.  *Ramirez v. Superintendent of Shawangunk Corr. Facility*, No. 17-CV-7185 (PAE) (HBP), 2019 WL 3719664, at *8 (S.D.N.Y. Jan. 2, 2019) (discussing that under either a lenient or exacting "good cause" standard, the petitioner failed to make a showing to warrant a stay), *R. & R. adopted*, 2019 WL 3714992 (S.D.N.Y. Aug. 6, 2019); *see also Daniels v. Stalone*, No. 14-CV-219 (MAT), 2017 WL 2931256, at *3–4 (W.D.N.Y. July 10, 2017) (holding that the court would "abuse its discretion" to find good cause where the petitioner had "not even attempted to demonstrate *any* cause for his failure to exhaust his claims").

Therefore, the Court lands on Option Three, which is to excise this claim from the instant motion so it can proceed with the others.  The Court recognizes that given the fact that AEDPA's statute of limitations has run, Petitioner will be foreclosed from bringing a future habeas action on his ineffective assistance of trial counsel claims if he receives an unfavorable result from a NYCPL § 440.10 proceeding, should he file one.  However, "the case law is clear that a district court does not have unfettered discretion in determining whether to grant a stay while state remedies are exhausted.  A stay to permit exhaustion of state remedies is reserved for very 'limited circumstances' in which good cause has been shown."  *Ramirez*, 2019 WL 3719664, at *8. Therefore, "[a]lthough the preclusion of habeas review is a harsh outcome, the operation of a statute of limitations to bar a claim is almost always harsh."  *Id.*

14

For these reasons, the Court cannot adjudicate Petitioner's ineffective assistance of trial counsel claim and therefore deems it excised from the Petition.

## III.  Petitioner's Procedurally Barred Claims

Federal habeas review is not available for a federal constitutional claim if the state court's decision on that claim rested on a state law ground that is both independent of the federal issue and adequate to support the state court's judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  "This prohibition applies to procedural state law grounds and 'bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'"  *Warren*, 2013 WL 1310465, at *14 (quoting *Coleman*, 501 U.S. at 729–30).  "To qualify as an adequate procedural ground, capable of barring federal habeas review, a state rule must be firmly established and regularly followed."  *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (internal quotation marks omitted).

As discussed previously, a federal court cannot review a procedurally barred claim "absent a showing of cause and prejudice to excuse the default[,]" *Dretke v. Haley*, 541 U.S. 386, 387–88 (2004), or that he is actually innocent, *see Gomez*, 87 F.4th at 107.

### A.  Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel was ineffective, citing to his writ of error coram nobis.  (Pet., at ECF 11.)  Respondent argues that this claim is unexhausted and otherwise procedurally barred.  (*See* Resp't Opp'n, Dkt. 7, at 47–51.)  The Court agrees.

The Appellate Division ruled against Petitioner on his writ of error coram nobis on November 2, 2022, holding as a matter of law that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel."  *Vazquez*, 175 N.Y.S.3d at 109.  Petitioner did not seek leave to appeal the Appellate Division's decision despite his ability to do so.  *See* N.Y. Crim.

Proc. Law § 450.90(1).  Unlike his claim of ineffective assistance of trial counsel for which he does not explain his failure to exhaust, for this claim, Petitioner appears to indicate that he believed that a writ of error coram nobis is "unappealable."  (Pet., at ECF 5.)  This is not the case.  "An appeal from a denial of *coram nobis* relief must be taken '[w]ithin thirty days after service upon the appellant of a copy of the order sought to be appealed.'"  *Hunter v. Annucci*, No. 19-CV-1321 (MKB), 2020 WL 9816004, at *4 (E.D.N.Y. Dec. 18, 2020) (quoting NYCPL § 460.10(5)(a)). Therefore, this ground for habeas relief is technically unexhausted.  Irrespective of this claim's unexhausted status, however, this claim is also procedurally barred.  The Appellate Division denied Petitioner's coram nobis petition on November 2, 2022.  Therefore, he had 30 days—until December 2, 2022—to seek leave to appeal that court's decision with the Court of Appeals. Because he failed to do so within the allowed time, he is unable to bring an appeal at this point, making this claim procedurally barred.

In order to overcome this procedural bar, Petitioner must show either good cause and prejudice, or actual innocence, for the Court to consider the effectiveness of his appellate counsel. *Gomez*, 87 F.4th at 107.  While the Supreme Court in *Rhines* did not enumerate circumstances that would qualify as "good cause," it indicated in a later decision that where a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court.'"  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).  However, there is a distinction between confusion regarding the timeliness of the filing of a petition as was present in *Pace*, and the lack of knowledge of legal procedures, as here.  Petitioner filed his habeas petition on December 28, 2022, a mere month after his judgment became final, and just under two months after the Appellate Division denied his writ of error coram nobis on November 2, 2022.  Instead of seeking leave to appeal this decision—which would have tolled AEDPA's one year statute of

limitations[9]—Petitioner came immediately to federal court with no explanation of his timing. What Petitioner did explain was his belief that a denial of a writ of error coram nobis is not an appealable order, demonstrating a lack of knowledge of the relevant legal procedures. This lack of knowledge, in itself, has been held by numerous courts to be insufficient to show good cause. *See Murphy v. Warden of Attica Corr. Facility*, No. 20-CV-3076 (PAE) (GWG), 2022 WL 1182043, at *2 (S.D.N.Y. Apr. 19, 2022) (collecting cases); *see also Davidson v. Capra*, No. 15-CV-9840 (LGS) (JLC), 2016 WL 6248449, at *2 (S.D.N.Y. Oct. 26. 2016); *Garcia v. Laclair*, No. 06-CV-10196 (SES) (DF), 2008 WL 801278, at *4 (S.D.N.Y. Mar. 24, 2008); *Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at *7 (E.D.N.Y. Feb. 8, 2006) (reasoning that the court would not find good cause for petitioner's confusion about appealability because to do so "would essentially endorse a standard which would eviscerate *Rhines* and undermine one of [ ] AEDPA's twin purposes by greatly decreasing a pro se petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition" (internal quotation marks omitted)).

Therefore, Petitioner has not established cause or prejudice for his failure to appeal the denial of his coram nobis petition. Furthermore, as discussed below, he has not demonstrated actual innocence to overcome this procedural bar. The Court accordingly deems Petitioner's claim of ineffective assistance by his appellate counsel as procedurally barred from federal habeas review.

---

[9] *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[T]h[e] proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending[.]"). In other words, the one-year AEDPA clock that began running when Petitioner's conviction became final—i.e., the date on which Petitioner's right to seek leave to appeal the Appellate Division's decision expired—would have stopped running during the pendency of Petitioner's appeal of the denial of his writ of coram nobis petition.

**B.      Waiver of Jury Trial**

As his final ground for habeas relief, Petitioner claims that his "Jury Trial Waiver violated Statutes because it was not knowingly intelligently and voluntarily made."  (Pet., at ECF 10.)  This claim is also procedurally barred.

In denying relief on this claim in Petitioner's direct appeal, the Appellate Division plainly stated that this issue was unpreserved for its review because Petitioner did not contemporaneously object to his waiver.  *See Vazquez*, 164 N.Y.S.3d at 851 ("The defendant's contention that his waiver of the right to a jury trial was invalid is unpreserved for appellate review . . . ." (citing New York's contemporaneous objection rule and collecting cases denying a petitioner's challenge to his waiver of a jury trial on this basis)).  New York's contemporaneous objection rule is "a firmly established and regularly followed New York procedural rule."  *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).  Therefore, this claim is procedurally barred from federal review.

In the petition before the Court, Petitioner has made "no effort" to overcome this procedural bar, by showing good cause and prejudice resulting from the procedural default, or that he is actually innocent (discussed further *infra*), so his waiver of a jury trial claim cannot support habeas relief.  *See Angeles*, 267 F. Supp. 2d at 416; *see also Siciliano Nuñez v. McCarthy*, No. 20-CV-3034 (KAM), --- F. Supp. 3d ---, 2024 WL 700127, at *7 (E.D.N.Y. Feb. 21, 2024) (finding a claim to be procedurally barred from federal habeas review when Appellate Division rejected it based on the contemporaneous objection rule).

Even if this claim were not procedurally barred, however, it is without merit.  "It is settled that a criminal defendant may waive his constitutional right to trial by jury if the waiver is 'knowing, voluntary, and intelligent.'"  *United States v. Carmenate*, 544 F.3d 105, 107 (2d Cir. 2008) (quoting *Morone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993)); *see also Silva v. Graham*,

No. 13-CV-3314 (MKB) (LB), 2014 WL 12654907, at *4 (E.D.N.Y. Aug. 4, 2014), *R. & R. adopted*, 2017 WL 435774 (E.D.N.Y. Feb. 1, 2017). A court considers "all the circumstances of the case to ensure that [the waiver] is knowing, voluntary, and intelligent." *Carmenate*, 544 F.3d at 108. It is noteworthy that the Supreme Court "has never required a trial court to engage in an allocution before accepting a defendant's waiver of their right to a trial by jury." *Ballinger v. Miller*, No. 16-CV-3856 (CBA), 2019 WL 4752022, at *6 (E.D.N.Y. Sept. 30, 2019) (denying habeas relief where petitioner waived his right to a jury trial).

In this case, the trial judge conducted an allocution prior to accepting Petitioner's waiver. Judge Buchter explained to Petitioner that "the Constitution guarantees you the right to have a trial by a jury of your peers." (R. 10.) When he asked Petitioner if he wished to waive this right, Petitioner responded in the affirmative. (R. 11.) The judge then asked Petitioner if he had discussed this decision with his attorney and he understood the rights he was waiving, to which Petitioner also responded in the affirmative. (*Id.*) Finally, the judge asked if Petitioner "felt it was in his interest, [his] strategy in the case?" (*Id.*) Petitioner again responded in the affirmative, and the trial judge accepted Petitioner's waiver at that point. (*Id.*) Petitioner also executed a written waiver of his right to a jury trial. (R. 10.) Though this allocution was relatively abbreviated, it certainly indicates that Petitioner's waiver of a jury trial was knowing, voluntary, and intelligent, which is all that is constitutionally required. That Petitioner also affirmed his decision in writing is further evidence of his waiver being knowing and voluntary. *See Philippe v. Lacy*, No. 95-CV-4545 (NG), 1998 WL 440301, at *6 (E.D.N.Y. July 30, 1998) (finding waiver of jury trial claim "clearly without merit as the record reveals an express waiver of the petitioner's right to a jury trial, which was signed by the petitioner, his counsel, and the judge presiding over the case").

## IV.    Petitioner's Actual Innocence Claim

For the first time in any of his post-trial litigation, Petitioner raises the argument that he was actually innocent of his crimes of conviction and that "a fundamental miscarriage of justice took place." (Pet., at ECF 5.)  To support this ground for habeas relief, Petitioner argues "[t]he case is based upon hearsay and the [e]vidence was, at best[,] circumstantial." (*Id.*)  Petitioner's invocation of actual innocence does not save any aspect of his petition.

"The doctrine of actual innocence was developed to mitigate the potential harshness of the judicial limitations placed on a petitioner's ability to file a successive or otherwise procedurally defaulted habeas petition in the federal court." *See Doe v. Menefee*, 391 F.3d 147, 160 (2d Cir. 2004) (citing *Schlup v. Delo*, 513 U.S. 298, 318–21 (1995)).  Therefore, "a state prisoner who 'seek[s] access to a federal habeas court in the face of a procedural obstacle,' and who cannot overcome that obstacle by showing cause and prejudice, 'must advance *both* a legitimate constitutional claim *and* a credible and compelling claim of actual innocence.'" *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (quoting *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012)).

The Supreme Court has not recognized a free-standing actual innocence claim.  *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see also Jimenez v. Stanford*, No. 21-2582, -- F.4th --, 2024 WL 1059097, at *13 (2d Cir. Mar. 12, 2024) (stating that it is an "open question of whether a freestanding innocence claim is even cognizable at all under federal law").  The Second Circuit has stated that an actual innocence claim "can only open a gateway to federal review of an otherwise procedurally barred [constitutional] claim that, if itself successful, could afford him relief." *Hyman*, 927 F.3d at 655 (quoting *Schlup*, 513 U.S. at 314).  Therefore, without more, Petitioner's "bare assertions of actual innocence do not help him." *Gentile v. Larkin*, No. 12-CV-55 (ERK), 2018 WL 1459449, at *7 (E.D.N.Y. Mar. 23, 2018) (denying habeas relief to petitioner

convicted of, *inter alia*, first degree rape).

Here, Petitioner presents nothing resembling a "credible and compelling claim" of actual innocence. Though this standard may be "somewhat cryptic," *Rivas*, 687 F.3d at 541, the Supreme Court has held that the actual innocence "gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). Petitioner does not present the Court with any new evidence of Petitioner's purported innocence, but instead asserts that the evidence at his trial was "hearsay" and "at [b]est, circumstantial." This is plainly incorrect. Rather, the evidence at trial included lengthy and detailed testimony from the victim and Sylvana, an eyewitness to Petitioner's crime; Petitioner's own statement seconds after the sexual assault evincing consciousness of guilt; and corroborative medical evidence. Rather than being based on "circumstantial" evidence and "hearsay," Petitioner's conviction was based on overwhelming evidence of Petitioner's guilt. *See Goodman v. Collado*, No. 18-CV-2769 (ENV), 2021 WL 4893676, at *6 (E.D.N.Y. Oct. 20, 2021) (denying habeas relief to petitioner who claimed actual innocence in the face of testimony from an eyewitness and the victim, reasoning that the purported "new evidence" presented by the petitioner was "no match for the People's case").

Therefore, Petitioner's actual innocence claim, either taken alone or considered as a procedural gateway for the Court to review his otherwise procedurally defaulted claims, fails.

### CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, is denied. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see*

*Middleton v. Att'ys Gen. of N.Y., Pa.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citation omitted)). Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is therefore respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 28, 2024
      Brooklyn, New York